O'CONNOR PLAYDON & GUBEN LLP
A LIMITED LIABILITY LAW PARTNERSHIP

JERROLD K. GUBEN   3107-0
JEFFERY S. FLORES   8691-0
Makai Tower, 24th Floor
733 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 524-8350
Facsimile: (808) 531-8628
jkg@opglaw.com
jsf@opglaw.com

Attorneys for Debtor
HAWAII BIOTECH, INC.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>HAWAII BIOTECH, INC.,<br><br>Debtor. | Case No. 09-02908<br>(Chapter 11)<br><br>*Overbid Deadline:*<br>Date: July 12, 2010<br><br>*Sale Objection Deadline:*<br>Date: July 12, 2010<br><br>*Auction and Sale Hearing:*<br>Date: July 19, 2010<br>Time: 10:30 a.m.<br>Judge: Honorable Robert J. Faris |

**NOTICE OF SALE OF ASSETS AND BID PROCEDURES;
EXHIBIT A**

    **PLEASE TAKE NOTICE** that on June 14, 2010, the Bankruptcy Court entered an Order Granting Debtor's Motion to Approve Certain Bid Procedures

1183234 v3/SF

(the "Bid Procedures Order") approving Bid Procedures (the "Bid Procedures"),[1] which set key dates, times, and procedures related to the sale of substantially all of the Debtor's assets (the "Purchased Assets"). A copy of the Bid Procedures is attached to this Notice. **All interested Bidders should carefully read the Bid Procedures**. To the extent that there are any inconsistencies between the Bid Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bid Procedures shall control.

      **PLEASE TAKE FURTHER NOTICE** that the Debtor has been and will continue to market the Purchased Assets in advance of an auction (the "Auction"). To be eligible to participate in the Auction each Bid and each Bidder must be determined by the Debtor to comply with the conditions for a Qualified Bid set forth in the Bid Procedures. **The deadline to submit a Qualified Bid is July 12, 2010 (the "Bid Deadline").** To be considered, a Bid must comply with the requirements for a Qualified Bid set forth in the Bid Procedures.

      **PLEASE TAKE FURTHER NOTICE** that, pursuant to the terms of the Bid Procedures Order, the Sale Hearing (defined below) and Auction shall take place at 10:30 a.m. prevailing Hawaii Time on July 19, 2010, at the Bankruptcy Court, 1132 Bishop Street, Honolulu, HI 96813, before the Honorable Robert J. Faris, or such later time on such day or other place as the Debtor shall notify all Bidders who have submitted Qualified Bids.

      **PLEASE TAKE FURTHER NOTICE** that a hearing will be held to confirm the results of the Auction and approve the transactions contemplated in the Bid Procedures and Sale Motion to the Successful Bidder at the Auction (the "Sale Hearing") on **July 19, 2010** at 10:30 a.m. prevailing Hawaii Time. The Sale Hearing may be continued from time to time by the Bankruptcy Court or the Debtor without further notice other than such adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on Service Parties (as defined below) and the entities who have filed objections to the Sale Motion, without further notice to other parties in interest.

      **PLEASE TAKE FURTHER NOTICE** that objections to the sale of the Purchased Assets to the Successful Bidder or Backup Bidder must be filed with the Bankruptcy Court and served so that they are actually received by (i) counsel for the Debtor, O'Connor Playdon & Guben LLP, Pacific Guardian Center – Makai Tower, 733 Bishop Street, 24th Floor, Honolulu HI 96813, Attn: Jerrold K. Guben;

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bid Procedures or the Bid Procedures Order, as applicable.

(ii) counsel to Buyer (a) McCorriston Miller Mukai MacKinnon LLP, Five Waterfront Plaza, 4th Floor, 500 Ala Moana Boulevard, Honolulu, Hawaii 96813, Attn: Stewart Pressman and (b) Cooley LLP, 101 California Street, 5th Floor, San Francisco, California 94111, Attn: Robert L. Eisenbach III; and (iv) counsel to any statutory committees appointed in the Debtor's chapter 11 case (collectively, the "Service Parties") **no later than 4:00 p.m. prevailing Hawaii Time on July 12, 2010**.

**PLEASE TAKE FURTHER NOTICE** that this Notice is subject to the full terms and conditions of the Bid Procedures and the Bid Procedures Order, which shall control in the event of any conflict with this Notice. The Debtor encourages parties in interest to review such documents in their entirety, available upon request from the Debtor's counsel and at the Bankruptcy Court.

DATED: Honolulu, Hawaii, June 17, 2010.

JERROLD K. GUBEN
JEFFERY S. FLORES
Attorneys for Debtor
HAWAII BIOTECH, INC.

# COPY OF BID PROCEDURES

# BID PROCEDURES[1]

Set forth below are the bid procedures (the "Bid Procedures") to be employed by Hawaii Biotech, Inc. (the "Debtor") for the sale (the "Transaction") of Debtor's assets and operations (the "Purchased Assets"). The Transaction will be implemented through a purchase agreement (the "Asset Purchase Agreement") with HBI Acquisition Corp. (the "Buyer"), subject to the receipt of higher or otherwise better bids according to these Bid Procedures.

---

### Important Dates

- **June 14, 2010:** Date of Bid Procedures Hearing

- **June 18, 2010:** Debtor to send Cure Notices to All Contract Counterparties

- **June 18, 2010:** Debtor to send Contract Assignment Notices to Counterparties to Assigned Contracts

- **July 12, 2010:** Cure Objection Deadline

- **July 12, 2010:** Deadline to submit Bid to be considered for the Auction

- **July 12, 2010:** Deadline for Counterparties to Assigned Contracts to object to assignment

- **July 12, 2010:** Deadline to file and serve objections to relief requested at Sale Hearing

- **July 19, 2010:** Date of Auction

- **July 19, 2010:** Date of Sale Hearing

---

### Approval of Bid Procedures and Bid Protections

Debtor shall request that the Bankruptcy Court set a hearing (the "Bid Procedures Hearing") to occur on or before June 14, 2010, among other things, to enter an order (the "Bid Procedures Order") approving the Bid Procedures and the bid protections set forth in the Asset Purchase Agreement (the "Bid Protections").

*Access to Diligence Materials*

- To participate in the bidding process and receive access to diligence materials (the "Diligence Materials"), a party must submit an executed confidentiality agreement, in the

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Asset Purchase Agreement.

form attached hereto as <u>Exhibit 1</u> (the "<u>Confidentiality Agreement</u>"). A party who qualifies for access to Diligence Materials shall be a "<u>Preliminarily Interested Party</u>."

- All due diligence requests must be directed to Jerrold Guben, Attorney for the Debtor.

- For Preliminary Interested Parties who are competitors of Debtor or who are affiliated with competitors of Debtor, Debtor reserves the right to withhold any Diligence Materials that Debtor determines, in its sole discretion, are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Party.

*Updates Regarding Marketing Process*

Debtor shall provide the Buyer with daily telephonic reports of all expressions of interest, and offers received, and shall provide the Buyer with complete copies of all such offers.

## Auction Qualification Process

Each offer, solicitation, or proposal (other than an offer, solicitation or proposal from the Buyer) (each, a "<u>Bid</u>") and each party (other than the Buyer) submitting such a Bid (each, a "<u>Bidder</u>") must satisfy the conditions listed below to be eligible to participate in the Auction. Debtor, in its sole discretion, shall determine compliance with each condition.

*Conditions*:

(a) <u>Experience in Vaccine Development</u>: Each Bid must be accompanied by written evidence that the Bidder has existing expertise and knowledge to continue to carry out and complete the on-going development and clinical trials of all of the Debtor's vaccines.

(b) <u>Good Faith Deposit</u>: A Bid must be accompanied by a deposit in the amount of $200,000 to an escrow account to be identified and established by Debtor (the "<u>Good Faith Deposit</u>").

(c) <u>Higher or Otherwise Better Terms</u>: A Bid must be on terms that are higher or otherwise better than the terms of the Asset Purchase Agreement.

(d) <u>Documentation</u>: A Bid must include (i) executed transaction documents (the "<u>Competing Transaction Documents</u>") to effect an offer to compete against the Buyer's proposal (a "<u>Competing Transaction</u>") and (ii) a copy of the Asset Purchase Agreement marked to show all changes requested by the Bidder (including those related to the purchase price).

(e) <u>Purchase Price; Related Terms</u>: A Bid must propose a purchase price of at least $1,700,000, reflecting the Buyer's Purchase Price, plus the $75,000 Expense Reimbursement payable under the Asset Purchase Agreement, plus an initial bid increment of $100,000. No Bidder, other than the Buyer, shall be entitled to any expense reimbursement, breakup fee, termination fee, or similar fee or payment.

(f) <u>Executory Contracts and Leases</u>: Competing Transaction Documents shall identify all of Debtor's executory contracts and unexpired leases that the Bidder wishes to have assumed and assigned to it pursuant to the Competing Transaction (collectively, the "<u>Assigned Contracts</u>").

(g) <u>Corporate Authority</u>: A Bid must include written evidence that demonstrates appropriate corporate authorization for the Bidder to consummate the proposed Competing Transaction; <u>provided</u>, that if the Bidder is an entity specially formed for the purpose of effecting the Competing Transaction, then the Bidder must furnish written evidence of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

(h) <u>Proof of Financial Ability to Perform</u>: A Bid must include written evidence that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all executory contracts and leases to be assumed and assigned in such Competing Transaction. Such information should include, among other things, the following:

    (i) contact names and numbers for verification of financing sources,

    (ii) evidence of the Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the Competing Transaction;

    (iii) the Bidder's current financial statements (audited if they exist); and

    (iv) any such other form of financial disclosure or credit-quality support information or enhancement, acceptable to Debtor in its sole discretion, that demonstrates such Bidder is able to close the Competing Transaction.

(i) <u>Contingencies</u>: A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

(j) <u>Irrevocable</u>: A Bid must be irrevocable through the Auction and must continue to remain irrevocable, subject to the terms and conditions of these Bid Procedures.

(k) <u>Bid Deadline</u>: Regardless of when a party qualifies as a Preliminarily Interested Party, all Bids must be in writing and received by Debtor on or before 5:00 p.m. (prevailing Hawaii time) on July 12, 2010 (the "<u>Bid Deadline</u>").

Bids received from Bidders on or before the Bid Deadline that are determined by Debtor to meet the above requirements shall constitute "<u>Qualified Bids</u>," and such Bidders shall constitute "<u>Qualified Bidders</u>." The Buyer shall be deemed a Qualified Bidder without compliance with the above requirements. Only Qualified Bidders may participate at the Auction.

## Auction

If more than one Qualified Bid (including the Asset Purchase Agreement) is received by the Bid Deadline, Debtor will conduct an auction (the "<u>Auction</u>") to determine the highest or

otherwise best Qualified Bid. Debtor, will determine the highest or otherwise best Qualified Bid in its business judgment, after taking into account any factors Debtor deems relevant, including, without limitation, the following criteria (the "Bid Assessment Criteria"):

  (i)  the amount and nature of the consideration;

  (ii)  the proposed assumption of any liabilities, if any;

  (iii)  the ability of the Qualified Bidder to close the proposed Transaction;

  (iv)  the proposed closing date and the likelihood, extent, and impact of any potential delays in closing;

  (v)  any purchase price (or similar) adjustments;

  (vi)  the impact of the Transaction on any actual or potential litigation; and

  (vii)  the net after-tax consideration to be received by Debtor's estate.

If no Qualified Bid (other than the Asset Purchase Agreement) is received by the Bid Deadline, Debtor will not conduct the Auction.

  The Auction shall take place at a recess during the Sale Hearing or such later time on such day or other place as Debtor shall notify all Bidders who have submitted Qualified Bids. The Auction shall be conducted according to the following procedures:

  (a)  Debtor Shall Conduct the Auction.

Debtor and its professionals shall direct and preside over the Auction.

  At the start of the Auction, Debtor shall describe the terms of the Asset Purchase Agreement or, if a higher or otherwise better Qualified Bid is received, such Qualified Bid (the "Auction Baseline Bid").

  All Bids made thereafter shall be Overbids (as defined below), shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all Bidders who have submitted Qualified Bids. The Buyer shall be permitted to credit bid the full amount of the Post-Petition Loan (including all unpaid interest, fees, costs, etc., due and owing on the date of the Auction, collectively, the "Loan Amount") and the Expense Reimbursement as part of any Overbid in connection with each round of bidding. Debtor shall maintain a transcript of all bids made and announced at the Auction, including the Auction Baseline Bid and all Overbids.

  (b)  Terms of Overbids.

  An "Overbid" is any bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid. The Buyer may, but is not required to, make an Overbid. To

-4-

submit an Overbid for purposes of the Auction, a Bidder must comply with the following conditions:

(i) *Minimum Overbid Increment*.

Any Overbid after the Auction Baseline Bid shall be made in $100,000 increments. Additional consideration in excess of the amount set forth in the Auction Baseline Bid shall include only cash, and, in the case of the Buyer, a credit bid of the Loan Amount and any Expense Reimbursement, in any combination.

(ii) *Remaining Terms are the Same as for Qualified Bids*.

Except as set forth in the Asset Purchase Agreement, any Overbid must remain open and binding on the Bidder until and unless Debtor accepts a higher or otherwise better Overbid and subject to the procedures with respect to Backup Bids (as described below).

To the extent not previously provided (which shall be determined by Debtor), a Bidder submitting an Overbid (other than the Buyer) must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement acceptable to Debtor) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid.

(iii) *Announcing Overbids*.

Debtor shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid, and the resulting benefit to Debtor's estate based on, among other things, the Bid Assessment Criteria.

(iv) *Consideration of Overbids*.

Debtor shall have the right to declare one or more adjournments in the Auction. Debtor may declare adjournments to, among other things: (1) facilitate discussions between Debtor and individual Bidders; (2) allow individual Bidders to consider how they wish to proceed; and (3) give Bidders the opportunity to provide Debtor with such additional evidence as Debtor may require that the Bidder has sufficient internal resources, or has received sufficient non- contingent debt and/or equity funding commitments, to consummate the proposed Competing Transaction at the prevailing Overbid amount.

(c) Backup Bidder.

Notwithstanding anything in the Bid Procedures to the contrary, if an Auction is conducted, the party Debtor determines to have the next highest or otherwise best Qualified Bid at the Auction shall be required to serve as a backup bidder (the "Backup Bidder"); provided, that the Buyer shall not be designated as the Backup Bidder absent the Buyer's written consent or agreement on the record. If the Buyer, but for the preceding clause, would otherwise be the Backup Bidder, the party the Debtor determines to have the next highest or otherwise best Qualified Bid at the Auction after the Buyer shall be required to serve as the Backup Bidder. The Backup Bidder shall be required to keep its initial Qualified Bid (or if the Backup Bidder

-5-
U.S. Bankruptcy Court - Hawaii    #09-02908    Dkt # 154    Filed 06/18/10    Page 9 of 18

submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Hawaii time) on the date that is forty-five (45) days after the date of the Auction (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder.

Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Transaction, because of a breach or failure to perform on the part of such Successful Bidder, Debtor may designate the Backup Bidder to be the new Successful Bidder, and Debtor will be authorized (but not required) to consummate the Transaction proposed in such Backup Bid without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to Debtor, and Debtor specifically reserves the right to seek all available damages from the defaulting Successful Bidder. The deposit of the Backup Bidder shall be held by Debtor until the earlier of twenty-four (24) hours after (i) the closing of the transaction with the Successful Bidder and (ii) the Outside Backup Date.

(d) Additional Procedures.

Debtor may announce at the Auction additional procedural rules (e.g., the amount of time to make subsequent Overbids) for conducting the Auction so long as the rules are not inconsistent with these Bid Procedures or the Asset Purchase Agreement.

(e) Consent to Jurisdiction as Condition to Bidding.

The Buyer and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Asset Purchase Agreement, the Auction, or the construction and enforcement of any Competing Transaction Documents.

(f) Closing the Auction.

Debtor shall continue the Auction until there is only one Qualified Bid that Debtor determines in its sole discretion is the highest or otherwise best Qualified Bid at the Auction (the "Successful Bid," and the Bidder submitting such Successful Bid, the "Successful Bidder"). In making this decision, Debtor shall consider, among other things, the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity, as determined by Debtor in its sole discretion to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed transaction documents memorializing the terms of the Successful Bid.

Debtor shall not consider any bids submitted after the conclusion of the Auction.

### Procedures for Determining Cure Amounts and Adequate Assurance for Counterparties to Assigned Contracts

By June 18, 2010, the Debtor shall send a notice to each counterparty to an executory contract or unexpired lease (each, a "Contract Counterparty") setting forth the Debtor's calculation of the cure amount, if any, that would be owing to such counterparty if the Debtor

U.S. Bankruptcy Court - Hawaii #09-02908 Dkt # 154 Filed 06/18/10 Page 10 of 18

decided to assume or assume and assign such executory contract or unexpired lease (each, a "Cure Notice"). Any Contract Counterparty that objects to the amount set forth in the Cure Notice must file an objection (a "Cure Objection"), on or before 4:00 p.m. prevailing Hawaii Time on July 12, 2010, which Cure Objection must be served on (i) counsel for the Debtor, O'Connor Playdon & Guben LLP, Pacific Guardian Center – Makai Tower, 733 Bishop St. – 24th Floor, Honolulu HI 96813, Attn: Jerrold K. Guben; (ii) counsel to Buyer (a) McCorriston Miller Mukai MacKinnon LLP, Five Waterfront Plaza, 4th Floor, 500 Ala Moana Boulevard, Honolulu, Hawaii 96813, Attn: Stewart Pressman and (b) Cooley LLP, 101 California Street, 5th Floor, San Francisco, California 94111, Attn: Robert L. Eisenbach III; and (iv) counsel to any statutory committees appointed in the Debtor's chapter 11 case (collectively, the "Service Parties") so that it is actually received no later than 4:00 p.m. prevailing Hawaii Time on July 12, 2010. If a Contract Counterparty does not timely file and serve a Cure Objection with respect to a Cure Notice, such Contract Counterparty will be forever barred from objecting to the cure amount proposed in such Cure Notice. If a Contract Counterparty files a timely Cure Objection and the parties are unable to consensually resolve the dispute, a hearing on such Cure Objection will be held at or prior to the Sale Hearing.

By June 18, 2010, the Debtor will send a notice via overnight delivery to each counterparty (each, an "Assigned Counterparty") to a contract designated as an Assigned Contract in the Asset Purchase Agreement (a "Contract Assignment Notice"). The Contract Assignment Notice will contain (i) reasonable detail of the proposed Assigned Contract and (ii) information regarding adequate assurance of future performance by the Buyer. Any Assigned Counterparty that objects to the assignment of its Assigned Contract or to the adequate assurance of the Buyer's ability to perform must file an objection (an "Assignment Objection") on or before 4:00 p.m. prevailing Hawaii Time on July 12, 2010, which Assignment Objection must be served on the Service Parties so that it is actually received no later than 4:00 p.m. (prevailing Hawaii time) on July 12, 2010. If an Assigned Counterparty does not timely file and serve an Assignment Objection, such Assigned Counterparty will be (i) forever barred from objecting to the assignment of their Assigned Contracts to the Buyer; (ii) deemed to have waived all pre-closing defaults and breaches under the Assigned Contracts; (iii) forever barred from objecting to the Buyer's adequate assurance of future performance, and (iv) deemed to have consented, for all purposes, to the assumption and assignment of their Assigned Contracts to the Buyer. If an Assigned Counterparty files a timely Assignment Objection and the parties are unable to consensually resolve the dispute, a hearing on the Assignment Objection will be held at the Sale Hearing.

If the Buyer is not the Successful Bidder at the Auction, then no later than five (5) business days after the Auction, the Debtor will send a subsequent Contract Assignment Notice to each counterparty to a contract designated as an Assigned Contract by the Successful Bidder or the Backup Bidder identifying the Successful Bidder and the Backup Bidder and providing information regarding adequate assurance of future performance by the Successful Bidder and the Backup Bidder. The Sale Order will address the procedures by which the Debtor will assume and assign the Assigned Contracts to a Successful Bidder or Backup Bidder that is not the Buyer.

Nothing shall affect the rights of the Successful Bidder to add or remove executory contracts and unexpired leases from the list of Assigned Contracts prior to the Sale Hearing. The

-7-
U.S. Bankruptcy Court - Hawaii #09-02908 Dkt # 154 Filed 06/18/10 Page 11 of 18

Debtor shall file a list of the Assigned Contracts to be assumed and assigned to the Successful Bidder at the Sale Hearing with the Court on or before the date of the Sale Hearing.

### Sale Hearing

Debtor will seek a hearing (the "Sale Hearing") on or before July 19, 2010, at which Debtor will, during a recess, conduct the Auction and, following the Auction, seek approval of the Transaction with the Successful Bidder. Any objections to the sale of the Purchased Assets to the Successful Bidder or Backup Bidder must be filed on or before 12:00 p.m. (prevailing Hawaii time) on July 12, 2010, and served on the Service Parties so that they are actually received by no later than 12:00 p.m. (prevailing Hawaii time) on July 12, 2010.

### Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by Debtor, but shall not become property of Debtor's estate absent further order of the Court. The Good Faith Deposits of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of twenty-four (24) hours after (i) the closing of the Transaction with the Successful Bidder, and (ii) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

MUTUAL CONFIDENTIALITY AGREEMENT
Between Hawaii Biotech, Inc. and _____

DATED: _____ 2010

**PARTIES:**

(1) Hawaii Biotech, Inc., a corporation located at 99-193 Aiea Heights Drive, Suite 200, Aiea, Hawaii 96701 ("**HBI**"); and

(2) _____, a corporation located at _____ ("**Company**").

**RECITALS**

(A) HBI is willing to disclose to Company and Company is willing to disclose to HBI certain of its respective Confidential Information (as defined below) for the Purpose (as defined below) on the terms and conditions set out in this Agreement.

(B) In consideration of the covenants, promises and other good and valuable consideration in this Agreement, the sufficiency of which is acknowledged, it is agreed as follows.

**OPERATIVE PROVISIONS**

**1. DEFINITIONS**

1.1 In this Agreement:

"**Affiliate**" means any company or other entity which, directly or indirectly, controls, is controlled by or is under common control with a Party where "control" means the ownership of more than 50% of the issued share capital or other equity interest or the legal power to direct or cause the direction of the general management and policies of such Party, company or other entity;

"**Confidential Information**" means, in the case of HBI, all information, data and other material relating directly or indirectly to HBI's and/or its Affiliates' business, projects or products, including without limitation, any clinical, pre-clinical, laboratory, regulatory or manufacturing information and, in the case of the Company, all information, data and other material relating to the Company's and/or its Affiliates' business, projects or products, including without limitation, any clinical, pre-clinical, laboratory, regulatory or manufacturing information and in either case all other information, data and other material:

    (a) disclosed by or acquired in any way from (either directly or indirectly) the Disclosing Party or its Representatives in conjunction with this Agreement, whether in written, electronic, oral, visual or other form;

    (b) generated by way of any analysis, compilations, data studies or other documents prepared by or on behalf of the Receiving Party containing, reflecting or based in

whole or in part on information, data or other material disclosed or acquired as described in paragraph (a) above; or

(c) regarding the existence, nature or status of any discussions between the Parties or their Representatives as contemplated by this Agreement, including the existence, nature and terms of this Agreement.

The Parties agree that no experimental materials will be transferred from one Party to another unless and until a mutually acceptable written materials transfer agreement shall have been executed by the transferring Party and the receiving Party.

Confidential Information shall **not** include any information, data and other material that:

(a) is public knowledge at the time of disclosure under this Agreement or which subsequently becomes public knowledge (other than as a result of a breach of this Agreement of other fault on the part of the Receiving Party); or

(b) can be demonstrated to have been lawfully in the possession of the Receiving Party prior to its disclosure under this Agreement or which subsequently comes into its possession from a third party (otherwise than in breach of any obligation of confidentiality either directly or indirectly).

**"Disclosing Party"** means the Party or its Representatives disclosing Confidential Information in connection with this Agreement;

**"Party"** and **"Parties"** means respectively HBI or the Company or, as the case may be, both such parties;

**"Purpose"** means the use of the Confidential Information to discuss Company's acquisition of the assets of HBI through a direct asset acquisition or through a plan of reorganization, in either case approved and confirmed by the United States Bankruptcy Court for the District of Hawaii (the **"Bankruptcy Court"**) in the case of *Hawaii Biotech, Inc.*, Case No. 09-02908 (an **"Approved Sale"**);

**"Receiving Party"** means the Party or its Representatives receiving or otherwise acquiring the Confidential Information in connection with this Agreement; and

**"Representatives"** means the Affiliates of each Party, and the directors, officers, employees, agents, representatives, attorneys and advisors of the Parties and their Affiliates.

1.2 In this Agreement, unless the context otherwise requires:
(a) references to "persons" includes individuals, bodies corporate (wherever incorporated), unincorporated associations and partnerships;

(b) the headings are inserted for convenience only and do not affect the construction of the Agreement;

(c) references to one gender includes both genders; and

(d) a "Party" includes references to that Party's successors and permitted assigns.

229393.2                                    2

U.S. Bankruptcy Court - Hawaii   #09-02908   Dkt # 154   Filed 06/18/10   Page 14 of 18

2.  **USE AND NON-DISCLOSURE**

2.1 Subject to the terms of this Agreement, in consideration of the disclosure of the Confidential Information by or on behalf of each of the Parties to each other, each Party undertakes:

(a) not to use the Confidential Information of the Disclosing Party nor allow it to be used by any person for any purpose other than the Purpose and to cease to use it upon written request by the Disclosing Party;

(b) to treat and maintain the Confidential Information of the Disclosing Party in strict confidence and not to directly or indirectly communicate or disclose it in any way to any other person without the express prior written consent of the Disclosing Party, except to such of it Representatives who reasonably require access to the Confidential Information for the Purpose and who are (and the Receiving Party has informed them that they are) acting under a legally binding obligation to the Receiving Party to treat the Confidential Information in the strictest confidence in accordance with the terms of this Agreement;

(c) to assume responsibility and liability for any breach of the terms of this Agreement by any of its Representatives (or action which would amount to such a breach if the same were a Party) who have or have had access to the Confidential Information of the Disclosing Party; and

(d) to take all reasonable measures and appropriate safeguards commensurate with those which it employs for the protection of its own confidential information (and to procure that all such steps are taken by its Representatives) to maintain the confidentiality of the Confidential Information of the Disclosing Party, to copy it only to the extent reasonably necessary to achieve the Purpose and not to permit unsupervised copying of the same.

2.2 No disclosure or announcement to any third party relating to the Confidential Information may be made by the Receiving Party or on its behalf except where:

2.2.1 such disclosure is, compelled by a court of law, statute, regulation or by the rules of any relevant securities exchange; and

2.2.2 the Disclosing Party has, to the extent practicable, been given sufficient prior written notice to enable it to seek confidential treatment of such Confidential Information; and

2.2.3 such disclosure is limited to the extent required.

3.  **RIGHTS TO CONFIDENTIAL INFORMATION**

3.1 Each Party acknowledges that nothing in this Agreement is intended to amount to or implies any transfer, license or other grant of rights in relation to the Confidential

229393.2    3

U.S. Bankruptcy Court - Hawaii   #09-02908   Dkt # 154   Filed 06/18/10   Page 15 of 18

Information or any patents, design right, trademark, copyright, database rights or other intellectual property rights owned or used by the other Party.

3.2 Neither Party gives any representation or warranty as to the completeness, sufficiency or accuracy of the Confidential Information disclosed by it in connection with this Agreement and accepts no liability howsoever arising from the use of its Confidential Information by the Receiving Party, save as provided in any definitive agreement which may be entered into between the Parties. Accordingly, the Disclosing Party shall not be liable for any direct, indirect or consequential loss or damage suffered by any person howsoever arising, whether in contract or tort, as a result of any use of the Confidential Information, including without limitation, the reliance upon any statement contained in or omitted from the Confidential Information.

3.3 Nothing is this Agreement shall be, or be construed as being, an agreement between the Parties or any of their respective Representatives to enter into any arrangement or further agreement relating to the subject matter of this Agreement, any such arrangement or agreement being the subject of separate negotiations. However, for the avoidance of doubt, this Agreement shall continue to cover the disclosure and use of Confidential Information during such negotiations unless and until a definitive agreement is executed.

3.4 The Company understands that (i) HBI and its Representatives shall be free to conduct any process for any transaction involving HBI or its assets as may be approved by the Bankruptcy Court, as determined by HBI in its discretion (including, without limitation, negotiating with any other interested parties and entering into a definitive agreement with any such parties without prior notice to the Company or any other person), (ii) any procedures relating to such process or transaction may be changed at any time, and (iii) the Company shall not have any claims whatsoever against HBI, its Representatives, or any third party with whom a transaction is entered into.

3.5 Each Party acknowledges and agrees that all Confidential Information received by it, and any copies of the Confidential Information, shall be and remain the exclusive property of the Disclosing Party. The Receiving Party shall, or shall procure, on the written request and at the option of the Disclosing Party, either the destruction or return of the Confidential Information, without retaining any copies, extracts or other reproductions, in whole or in part, other than a single archival copy of the Confidential Information, to be retained in its legal department solely for the purpose of ensuring compliance with the terms of this Agreement. Except for the retention of such single archival copy, on the written request of the Disclosing Party, Confidential Information comprising analyses, complications, data studies or other documents prepared by the Receiving Party containing or based in whole or in part on the Disclosing Party's Confidential Information or reflecting the Receiving Party's views of such Confidential Information shall be destroyed by the Receiving Party. Upon request, such return or destruction shall be certified in writing to the Disclosing Party by the authorized officer of the Receiving Party supervising the return or destruction.

3.6 To the extent that any Confidential Material may include materials subject to the attorney-client privilege, work product doctrine or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, each Party understands and agrees that there is a commonality of interest with respect to such matters and it is the desire, intention and mutual understanding of HBI and the Company that the sharing of such material is not intended to, and shall not, waive or diminish in

229393.2                                         4

U.S. Bankruptcy Court - Hawaii   #09-02908   Dkt # 154   Filed 06/18/10   Page 16 of 18

any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Confidential Material provided by either Party that is entitled to protection under the attorney-client privilege, work product doctrine or other applicable privilege shall remain entitled to such protection under these privileges, this Agreement, and under the joint defense doctrine.

4. **REMEDIES**

    Due to the proprietary nature of the Confidential Information, the Parties understand and agree that the Disclosing Party may suffer irreparable harm in the event that the Receiving Party fails to comply with any of the obligations contained under this Agreement and that monetary damages alone may not be an adequate remedy for such breach. Accordingly, the Parties agree that the Disclosing Party shall be entitled to seek the remedies of injunction, specific performance and other equity relief for any threatened or actual breach of the obligations contained in this Agreement.

5. **DURATION**

    The term of this Agreement shall be for a period of 5 years from the date of this Agreement.

6. **OTHER PROVISIONS**

    6.1  Any variation to this Agreement must be in writing and signed by a properly authorized representative of each Party.

    6.2  Neither party shall, during the term of this Agreement and for a period of 12 months immediately following the expiration or termination of the Agreement, whether on its own behalf or in conjunction with or on behalf of any person, firm, company, business entity or other organization and whether as employee, director, principal, agent, consultant, shareholder or in any other capacity whatsoever, directly or indirectly induce, solicit, entice or procure any person who is or was an employee, agent and/or representative of the other party to cease working for such other party or accept into employment or otherwise engage or use the services of any person where that person is an employee, agent and/or representative of such other party at that time.

    6.3  This Agreement may not be assigned by either Party without the prior written consent of the other Party; provided, however, that HBI may assign this Agreement without the consent of the Company in connection with an Approved Sale, and the assignee in such Approved Sale shall have all of the rights granted to HBI hereunder, including, without limitation, the right to enforce against the Company, its Representatives, and their respective successors and assigns all of the rights, benefits, and privileges possessed by HBI in this Agreement as if such assignee were originally a party hereto.

    6.4  Any delay or failure by either Party in exercising any right power or privilege under this Agreement shall not constitute a waiver of such right, power or privilege nor shall any single or partial exercise preclude any future exercise.

    6.5  If any term of provision of this Agreement is held by any court or other competent authority to be void or unenforceable, in whole or in part, the other provisions of this

U.S. Bankruptcy Court - Hawaii   #09-02908   Dkt # 154   Filed 06/18/10   Page 17 of 18

Agreement and the remainder of the affected provision shall continue to be valid and remain enforceable to the fullest extent permitted by law.

6.6 A person who is not a party to this Agreement other than an Affiliate shall have no right to enforce any of its terms. Notwithstanding the foregoing, this Agreement may be varied or terminated by agreement in writing between the parties or this Agreement may be rescinded (in each case), without the consent of any such Affiliates.

6.7 This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of the Agreement, and all of which, when taken together, shall be deemed to constitute one and the same Agreement. Signatures to this Agreement by fax, by electronic mail in "portable document format" (".pdf"), or by any other electronic means intended to preserve the original graphic and pictorial appearance of the Agreement, shall have the same effect as physical delivery of the paper document bearing the original signature.

6.8 This Agreement and the obligation of the Parties shall be governed by and construed in accordance with the laws of the State of Hawaii, without regard to its conflict of law provisions and the Parties subject themselves to the jurisdiction of the courts of the State of Hawaii.

| Signed for and on behalf of<br>**Hawaii Biotech, Inc.** | Signed for and on behalf of<br>_____ |
|---|---|
| _____<br>**Signature** | _____<br>**Signature** |
| _____<br>**Print Name** | _____<br>**Print Name** |
| _____<br>**Title** | _____<br>**Title** |

U.S. Bankruptcy Court - Hawaii   #09-02908   Dkt # 154   Filed 06/18/10   Page 18 of 18